1    MICHAEL A. JACOBS (CA SBN 111664)
     MJacobs@mofo.com
2    GEORGE C. HARRIS (CA SBN 111074)
     GHarris@mofo.com
3    LYNN M. HUMPHREYS (CA SBN 168062)
     LHumphreys@mofo.com
4    MORRISON & FOERSTER LLP
     425 Market Street
5    San Francisco, California  94105-2482
     Telephone: 415.268.7000
6    Facsimile: 415.268.7522

7    LAWRENCE K. ROCKWELL (CA SBN 72410)
     ERIC DONEY (CA SBN 76260)
8    JULIE E. HOFER (CA SBN 152185)
     DONAHUE GALLAGHER WOODS LLP
9    300 Lakeside Drive, Suite 1900
     Oakland, California  94612-3570
10   Telephone: 510.451.0544
     Facsimile: 510.832.1486
11   Email:  julie@donahue.com

12   Attorneys for Plaintiff
     AUTODESK, INC.

13

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16

| 17 | AUTODESK, INC., a Delaware corporation, | Case No. _____ |
|---|---|---|
| 18 | Plaintiff, | **COMPLAINT FOR COPYRIGHT INFRINGEMENT** |
| 19 | v. | **DEMAND FOR JURY TRIAL** |
| 20 | CARDWELL ARCHITECTS, INC., a Washington corporation, d/b/a | |
| 21 | CARDWELL/THOMAS & ASSOCIATES, INC., | |
| 22 | Defendant. | |

23

24

25

26

27

28

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**                                    1

sf-2538728

1    Plaintiff Autodesk, Inc. ("Autodesk") brings this Complaint against Cardwell Architects,

2   Inc., d/b/a Cardwell/Thomas & Associates, Inc. ("Cardwell/Thomas") for copyright infringement

3   based on Cardwell/Thomas's unauthorized distribution of Autodesk's AutoCAD® software.

4

5                                         **PARTIES**

6          1.     Autodesk is a corporation organized and existing under the laws of Delaware, with

7   its corporate headquarters at 111 McInnis Parkway, San Rafael, California 94903.  Autodesk is a

8   leading design software and services provider, and the maker of the well-known and widely used

9   AutoCAD® software program.

10         2.     On information and belief, Cardwell Architects, Inc., is a corporation organized

11  under the laws of the state of Washington with its principal place of business in Seattle,

12  Washington, and has done business as Cardwell/Thomas & Associates, Inc.

13

14                                     **JURISDICTION**

15         3.     This Court has subject-matter jurisdiction over Autodesk's copyright infringement

16  claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (arising under the

17  Federal Copyright Act).  The Court also has subject-matter jurisdiction over Autodesk's claims

18  under 28 U.S.C. § 1332(a)(1), because Autodesk and Cardwell/Thomas are citizens of different

19  states and the matter in controversy exceeds $75,000 exclusive of interest and costs.

20

21                                          **VENUE**

22         4.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and

23  1400(a), in that Cardwell/Thomas has consented to personal jurisdiction and venue in this district

24  in a written agreement, described below, with Autodesk.

25

26                             **INTRADISTRICT ASSIGNMENT**

27         5.     Because this matter is an Intellectual Property Action, there is no basis for

28  assignment to a particular location or division of the Court pursuant to Civil L.R. 3-2(c).

2

sf-2538728

1

**GENERAL ALLEGATIONS**

2       6.     Autodesk is one of the world's leading design software and services provider for the

3    building, manufacturing, infrastructure, and media and entertainment industries.  Autodesk is a

4    well-known leader in the field of software for computer-aided design ("CAD").  CAD software is

5    used in design applications by architects, engineers, manufacturers, and others.

6       7.     For many years, Autodesk has published and licensed, and continues to license, its

7    industry-leading CAD software product, the AutoCAD® program.  Autodesk never sells its

8    software products, but only offers non-exclusive, limited use licenses to end users, and non-

9    exclusive, limited distribution licenses to authorized distributors, via end user and distribution

10   agreements, respectively, both of which clearly state that Autodesk licenses its software products.

11      8.     Autodesk owns all copyright interests in the AutoCAD® programs.  Autodesk has

12   registered its copyright in the AutoCAD® programs, including but not limited to the version at

13   issue in this matter, AutoCAD®, Release 14 software.  A true and correct copy of the Certificate

14   of Registration (TX 4-558-849) for this product is attached hereto as Exhibit 1.

15      9.     In connection with Autodesk's license compliance activities, Autodesk received a

16   report that Cardwell/Thomas was engaging in unauthorized use of Autodesk's software products.

17   Autodesk and Cardwell/Thomas resolved this matter in or about March 1999 by entering into a

18   Settlement Agreement (the "Settlement Agreement").  Cardwell/Thomas was represented by

19   counsel in the settlement negotiations that resulted in the parties' execution of the Settlement

20   Agreement.  A true and correct copy of the Settlement Agreement between Autodesk and

21   Cardwell/Thomas is attached hereto as Exhibit 2.  The Settlement Agreement provided that

22   Autodesk would ship ten (10) packages of AutoCAD®, Release 14 software to Cardwell/Thomas,

23   subject to an express agreement, per Section 4 of the Settlement Agreement and the Autodesk

24   Software License Agreement ("SLA") attached thereto, that:

25

26           a.   Autodesk would grant Cardwell/Thomas a limited, non-transferable license

27                to use the software being provided pursuant to the Settlement Agreement

28                (SLA Section entitled "Grant of License");

3

1          b.  Autodesk retained "Title and copyrights to the Software and accompanying

2               materials and any copies" (SLA Section entitled "Copyrights");

3          c.  Cardwell/Thomas "may not … transfer all or part of the Software …,"

4               (SLA Section entitled "Restrictions"); and

5          d.  In case of upgrades/updates, Cardwell/Thomas "must destroy software

6               previously licensed" (SLA Section entitled "Upgrades and Updates").

7

8          10.  After Cardwell/Thomas signed the Settlement Agreement and paid the settlement

9   amount, Autodesk shipped ten (10) packages of AutoCAD®, Release 14 software to

10  Cardwell/Thomas.

11          11.  Cardwell/Thomas representatives opened the packages of AutoCAD®, Release 14

12  software and found in each a printed copy of the SLA.  A true and correct copy of the SLA for

13  AutoCAD®, Release 14 software, which contains the same language as the other SLAs, is

14  attached hereto as Exhibit 3.  Each package of AutoCAD®, Release 14 software also contained a

15  jewel case enclosing a CD-ROM containing the compiled code for AutoCAD®, Release 14

16  software.  Each jewel case was sealed with a warning sticker that stated:  "This software is

17  licensed subject to the license agreement that appears during the installation process or is

18  included in the package.  If after reading the agreement you do not wish to accept its terms, you

19  may return the software."  Cardwell/Thomas representatives broke the sticker on each jewel case

20  (a true and correct copy of the jewel case sticker seal for the AutoCAD®, Release 14 software is

21  attached hereto as Exhibit 4) and installed the software, i.e., inserted the CDs into personal

22  computers, thereby creating a copy of the software on the hard drives of the computers.  At the

23  time of installation, Cardwell/Thomas also obtained an authorization code from Autodesk to

24  activate the AutoCAD®, Release 14 software.  That authorization code was noted in handwriting

25  on the CD jewel cases.  True and correct copies of the jewel cases for two of the four sets of

26  AutoCAD®, Release 14 software are attached hereto as Exhibit 5.

27          12.  During the installation process for each package of AutoCAD®, Release 14 software,

28  the Cardwell/Thomas representatives were again prompted to accept the terms of the SLA by

4

1    clicking through a screen stating as follows:  "I have read the terms and conditions of the

2    Autodesk Software License Agreement contained in the Autodesk product box.  By pressing

3    <Accept>, I agree to these terms and conditions and understand that Software will be

4    installed . . . ."

5          13.   Subsequent to the execution of the Settlement Agreement, Cardwell/Thomas

6    purchased upgrades to all ten (10) of the licenses of AutoCAD®, Release 14 software it had

7    acquired pursuant to the terms of the Settlement Agreement, along with an upgrade to a single

8    license of AutoCAD®, Release 14 software it had obtained prior to the settlement with Autodesk

9    described above, for a total of eleven (11) licenses upgraded to AutoCAD® 2000 software.  On or

10   about January 2, 2002, Cardwell/Thomas registered with Autodesk the upgrades of its licenses to

11   AutoCAD® 2000 software.  Cardwell/Thomas licensed the AutoCAD® 2000 program on a

12   "network" basis for 11 users, which means that Cardwell/Thomas received a single package of

13   the AutoCAD® 2000 software and was allowed under the terms of its license agreement with

14   Autodesk to install that program on a network server accessed concurrently by a maximum of 11

15   users.  In upgrading in lieu of purchasing new licenses, Cardwell/Thomas received a significant

16   discount on the licenses it purchased for AutoCAD® 2000 software, namely, the suggested retail

17   price of $495 for an upgrade of each license versus $3,750 for a new license.  This discount was

18   based, in part, on Cardwell/Thomas's express agreement to the license term (in the SLA

19   incorporated into its Settlement Agreement as well as in the SLA that accompanied the

20   AutoCAD®, Release 14 software and in the SLA that accompanied the AutoCAD® 2000

21   software), that Cardwell/Thomas would destroy the AutoCAD®, Release 14 software copies in its

22   possession.  According to the terms of the SLA, upon Cardwell/Thomas's upgrade of AutoCAD®,

23   Release 14 software, all of Cardwell/Thomas's rights to use its license to that software were

24   extinguished.  In addition, Cardwell/Thomas was obligated to destroy the AutoCAD®, Release 14

25   software in its possession.

26         14.   During the installation process for the upgrade to the AutoCAD® 2000 software it

27   acquired, Cardwell/Thomas was prompted to accept the terms of the AutoCAD® 2000 SLA by

28   clicking through a screen stating as follows:  "Software License Agreement . . . .  To install

5

1   AutoCAD 2000, you must accept this agreement.  If you choose Reject, Setup will close."  A true

2   and correct copy of the AutoCAD® 2000 SLA is attached hereto as Exhibit 6.

3          15.   After the installation process was completed, Cardwell/Thomas had in its possession,

4   at a minimum, one CD with AutoCAD® 2000 software, installed copies of the AutoCAD® 2000

5   software for up to eleven users at a time as permitted under its AutoCAD® 2000 SLA and

6   upgrade agreement, and 10 CDs with AutoCAD®, Release 14 software.  Cardwell/Thomas was

7   obligated to destroy all installed copies and CDs with AutoCAD®, Release 14 software pursuant

8   to the terms of the Settlement Agreement, the AutoCAD®, Release 14 SLA, and the AutoCAD®

9   2000 SLA.

10          16.   Subsequent to this upgrade, Cardwell/Thomas again upgraded its eleven (11) licenses

11   of AutoCAD® software from AutoCAD® 2000 software to AutoCAD® 2004 software, and

12   registered this upgrade with Autodesk on or about January 14, 2004.  The AutoCAD® 2004

13   software was licensed to Cardwell/Thomas by Autodesk also on a "network" basis, meaning that

14   Cardwell/Thomas received one package of software, and was permitted to have up to eleven users

15   at a time use the software.  As with the upgrade from AutoCAD®, Release 14 software to

16   AutoCAD® 2000 software, Cardwell/ Thomas was required to accept the terms of the AutoCAD®

17   2004 SLA before the program could be installed on its computers.  After the installation process

18   was completed, Cardwell/Thomas had in its possession, at a minimum, one CD with AutoCAD®

19   2004 software, installed copies of the AutoCAD® 2004 software for up to eleven concurrent users

20   as permitted under its AutoCAD® 2004 SLA, one CD with AutoCAD® 2000 software, and 10

21   CDs with AutoCAD®, Release 14 software.  Cardwell/Thomas was obligated to destroy all

22   installed copies and CDs with AutoCAD®, Release 14 software and AutoCAD® 2000 software

23   pursuant to the terms of the Settlement Agreement, the AutoCAD®, Release 14 SLA, the

24   AutoCAD® 2000 SLA, and the AutoCAD® 2004 SLA.

25          17.   In or about April 2007, Cardwell/Thomas transferred four (4) of the ten (10) CDs

26   with AutoCAD®, Release 14 software that it was obligated to destroy, to Mr. Timothy Vernor

27   ("Vernor").  Said transfer from Cardwell/Thomas to Vernor occurred in violation of the

28   Settlement Agreement, the AutoCAD®, Release 14 SLA, the AutoCAD® 2000 SLA, and the

6

sf-2538728

1   AutoCAD® 2004 SLA.  Subsequently, Vernor listed one or more of those AutoCAD®, Release 14

2   programs acquired from Cardwell/Thomas for sale at various times on the Internet auction

3   website maintained by eBay, Inc.

4   　　　　18.   In the Settlement Agreement, Cardwell/Thomas and Autodesk agreed that "the

5   United States District Court for the Northern District of California, or the appropriate state court

6   located in Marin County, California, shall have exclusive jurisdiction over any legal action or

7   proceeding arising out of or relating to this Agreement," and expressly consented to personal

8   jurisdiction of this Court "for the purpose of any such action or proceeding."  Exhibit 2, at

9   paragraph 9.

10

11   **FIRST CLAIM FOR RELIEF**
**(COPYRIGHT INFRINGEMENT)**

12   　　　　19.   Autodesk incorporates by reference all prior paragraphs of this Complaint as if they

13   were set forth here in full.

14   　　　　20.   Autodesk is the sole owner of all copyrights in the AutoCAD® programs.  A copy of

15   the Certificate of Registration for the copyrighted AutoCAD®, Release 14 software is attached as

16   Exhibit 1.

17   　　　　21.   Cardwell/Thomas's transfer of the AutoCAD® software programs to Vernor

18   exceeded the scope of Autodesk's license grant to Cardwell/Thomas pursuant to the Settlement

19   Agreement and SLA.  By transferring copies of AutoCAD® software without Autodesk's consent,

20   approval or license, Cardwell/ Thomas infringed Autodesk's exclusive rights, as copyright owner,

21   "to distribute copies . . . by sale or other transfer of ownership, or by rental, lease, lending . . . ."

22   17 U.S.C. § 106(3).  Cardwell/Thomas's infringement was knowing and willful.

23   　　　　22.   Autodesk has suffered and is suffering irreparable injury from Cardwell/Thomas's

24   infringing conduct, which will continue until enjoined by the Court.  As a result of

25   Cardwell/Thomas's acts of infringement, Autodesk is without adequate remedy at law.  Autodesk

26   is entitled to preliminary and permanent injunctions prohibiting Cardwell/Thomas, its agents,

27   servants, employees, successors and assigns, and all parties acting in concert with it, from

28   infringing Autodesk's exclusive rights in the AutoCAD® programs in any manner, including but

7

sf-2538728

1   not limited to, the distribution, sale, copying, and use of the AutoCAD® programs. In addition,

2   Autodesk is entitled to recover all profits realized by Caldwell/Thomas from its infringing

3   conduct, as well as Autodesk's damages and costs.

4

5

6                      **JURY DEMAND**

7       23. Pursuant to Federal Rule of Civil Procedure 38(b), Autodesk demands a trial by jury

8   as to all issues so triable in this action.

9

10

11                  **PRAYER FOR RELIEF**

12     **WHEREFORE**, Autodesk prays for judgment as follows:

13       1. For preliminary and permanent injunctive relief enjoining and restraining

14           Cardwell/Thomas, its agents, servants, employees, successors and assigns, and all

15           parties acting in concert with it, from infringing and/or contributing to the

16           infringement of Autodesk's exclusive rights in the AutoCAD® programs in any

17           manner, including but not limited to, the unauthorized distribution, sale, copying, and

18           use of Autodesk software products;

19

20

21

22

23

24

25

26

27

28

8

1

2.   For an award of actual damages in an amount to be determined at trial, together with

2

the profits derived from Cardwell/Thomas's unlawful infringement of Autodesk's

3

copyrights;

4

3.   In the alternative at Autodesk's election before the entry of a final judgment, for

5

statutory damages for each act of infringement in an amount provided by law, as set

6

forth in 17 U.S.C. § 504;

7

8

4.   For Autodesk's litigation expenses and costs incurred, including without limitation

9

its attorneys' fees, as set forth in 17 U.S.C. § 505; and

10

5.   For such other and further relief as the Court deems just and proper.

11

12

13

Dated: January 27, 2009                          MICHAEL A. JACOBS

14

GEORGE C. HARRIS

LYNN M. HUMPHREYS

15

MORRISON & FOERSTER LLP

16

LAWRENCE K. ROCKWELL

ERIC DONEY

17

JULIE E. HOFER

DONAHUE GALLAGHER WOODS LLP

18

19

By: _____

20

MICHAEL A. JACOBS

21

Attorneys for Plaintiff

AUTODESK, INC.

22

23

24

25

26

27

28

9